**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**DONNA YERARDI,**

**Plaintiff,**

**v.**                                                    **Civil Action No.: 5:11-cv-124**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

**Defendant.**

**REPORT AND RECOMMENDATION**
**THAT CLAIMANT'S MOTION FOR SUMMARY JUDGMENT BE DENIED AND**
**COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT BE GRANTED**

**I.  Introduction**

A.    Background

　　　Plaintiff, Donna Yerardi, ("Claimant"), filed her Complaint on September 13, 2011,

seeking judicial review pursuant to 42 U.S.C. §§ 405(g) of an adverse decision by Defendant,

Commissioner of Social Security ("Commissioner").[1]  Commissioner filed his Answer on

January 30, 2011.[2]  On February 29, 2012, Claimant filed a Motion for Summary Judgment.[3]  On

April 24, 2012, Commissioner filed a Motion for Summary Judgment.[4]

B.    The Pleadings

　　　1.    Claimant's Motion for Summary Judgment & Memorandum in Support

　　　2.    Commissioner's Motion for Summary Judgment & Memorandum in Support

---

[1] Dkt. No. 1.

[2] Dkt. No. 9.

[3] Dkt. No. 12.

[4] Dkt. No. 16.

C.    Recommendation

I recommend that:

1.    Claimant's Motion for Summary Judgment be **DENIED** because the ALJ adequately developed the record, supported his decision by substantial evidence, and based his decision upon a correct application of law.

2.    Commissioner's Motion for Summary Judgment be **GRANTED** for the same reasons set forth above.

## II.  Facts

A.    Procedural History

Claimant filed an application for Disability Insurance Benefits on March 27, 2007, alleging disability since March 6, 2003 due to a back injury, mental and emotional conditions, depression, anxiety and pain. (Tr. 151-52, 162, 165-66 ). The application was initially denied on August 24, 2007 and on reconsideration on October 19, 2007.  (Tr.90-94, 96-98). On November 1, 2007, Claimant requested a hearing before an ALJ and received a hearing on September 24, 2008 in Hagerstown, Maryland by video teleconference with an ALJ in Richmond, Virginia. (Tr. 99, 55-72).

On October 28, 2008, the ALJ issued a decision adverse to Claimant finding that she was not under a disability within the meaning of the Social Security Act. (Tr. 75-86). Claimant requested review by the Appeals Council, and on July 23, 2009, the Appeals Council vacated the ALJ's decision and remanded the case for further proceedings.

Accordingly, on April 23, 2010, a supplemental hearing was held, (Tr. 34-45), but on May 26, 2010, the ALJ again denied 's claim. (Tr. 13-31). The ALJ found that although

Claimant's facet syndrome and degenerative disc disease were severe impairments, she maintained the residual functional capacity to perform light work, except that she was only occasionally able to climb ramps or stairs, balance, stoop, kneel, crouch or crawl. She could also not climb ladders, ropes or scaffolds, have concentrated exposure to extreme cold and vibration, or have exposure to hazards such as moving machinery or heights. (Tr. 20). Claimant again requested review by the Appeals Council, but on July 14, 2011, the Appeals Council denied Claimant's request. (Tr. 2-5, 10, 12). Claimant filed this action, which proceeded as set forth above, having exhausted her administrative remedies.

B.      Personal History

Claimant was born on June 21, 1961, and was forty-seven years old on the date of the September 24, 2008 hearing before the ALJ. (Tr. 56). Claimant has a general equivalency diploma (GED) and some college courses that she took in 2000, as well as a certified nurse's aid (CNA) certificate. (Tr. 38, 57, 172). Claimant has prior work experience as a clerical worker, an assembly line worker, and as a nurse. (Tr. 57-59).

C.      Medical History

The following medical history is relevant to the issue of whether substantial evidence supports the ALJ's finding that the Claimant is not under a disability and can still perform work in the national economy:

On May 6, 2003, Claimant was diagnosed with low back strain and contusion as a result of a work-related injury. (Tr. 277). On a pain scale from one to ten, she reported her pain level as being a seven. (Tr. 275). She was given pain medication and told to take a few days off of work. (Tr. 277). On May 7, 2003, a CT scan showed minimal to mild degenerative disc changes

throughout her lumbar spine. (Tr. 280). However, on May 14, 2003, it was noted that she had no bulging, herniation, or spinal stenosis. (Tr. 283).

Between May 22, 2003 and August 27, 2003, Claimant went to physical therapy sessions. (Tr. 290-330). Upon discharge, she reported improvement in trunk range of motion but no improvement in strength. (Tr. 290). She was also prescribed a TENS unit to help manage her pain levels. (Tr. 290). On July 9, 2003, Claimant saw Mara Vucich, D.O. for low back and bilateral leg pain. (Tr. 331-40). She was diagnosed with lumbar pain with radicular symptomology bilaterally, however her MRI results and nerve conduction study came back negative. (Tr. 333).

On July 25, 2003, Claimant saw Dr. Vucich for a follow-up and reported that her pain level continued to be between a five and a nine on a pain scale out of ten. (Tr. 332). On September 16, 2003, Claimant again saw Dr. Vucich for a follow-up about her low back pain and bilateral leg pain. (Tr. 331). She was referred for behavioral health treatment for her reactive depression and anxiety, but she never sought treatment because the services were not covered by Workmen's Compensation. (Tr. 331). In October 2003, Plaintiff sought treatment from the ER for an acute exacerbation of her chronic low back pain. (Tr. 340-42).

On September 8, 2004, Claimant sought emergency care for pain, swelling and discharge on her face and was diagnosed with facial cellulitis. (Tr. 361). She was also treated for nose redness, pain and anxiety in December 2004. (Tr. 373-75). On December 13, 2005, Claimant's MRI showed spondylolysis of the pars interarticularis at L5. (Tr. 395).

In March 2006, Claimant sought treatment at the ER for a cough and an earache. (Tr. 400-02). On October 26, 2006, Claimant again went to the ER with complaints of chest pain

radiating down to her abdomen and back up to her left arm. (Tr. 413). An examination of her heart, lungs, back and extremities were normal, but the following day she had a cardiac consultation, and was diagnosed with atypical chest pain, risk factors for coronary artery disease, and mildly elevated white blood cell count. (Tr. 417). A week later, Claimant was diagnosed with bronchitis. (Tr. 442).

On August 9, 2007, a consultative physical examination by Robert F. Webb, M.D. showed that Claimant had lumbar spasms, reduced reflexes in the lower extremities, decreased sensation in the right leg, and mild weakness in the bilateral lower extremities. (Tr. 452-54, 463). He diagnosed her with chronic low back pain with possible right nerve root irritation at the L4-L5 and L5-S1, tobacco abuse, and situational anxiety and depression with a history of panic attacks. (Tr. 453). She was treated for some of these conditions with physical therapy, medication and intramuscular Toradol injections. (Tr. 492).

On August 15, 2007, a consultative mental status examination was completed by Harry W. Hood, M.S. He diagnosed Claimant with panic disorder, post-traumatic stress disorder, obsessive-compulsive disorder, and depressive disorder. (Tr. 467). Her memory, task persistence, and pace were all within normal limits and her concentration was good (Tr. 466-67), but Claimant's prognosis with respect to her anxiety and depression was described as poor without regular mental health treatment. (Tr. 468).

On October 11, 2007, Claimant went to the emergency room for treatment after falling from her deck and hurting her back. (Tr. 515-16). Imaging of her cervical spine showed facet disease on the right at C3-C4 with associated secondary grade one anterior spondylolisthesis of C3 over C4 and diffuse posterior bulging of the annulus at C4-C5 and C5-C6, with secondary

narrowing of the neural foramina. (Tr. 521). An MRI of her spine also revealed mild disc disease at several levels and imaging of her lumber spine showed spondylolysis at L5. (Tr. 518). She was diagnosed with degenerative disc disease and cervical strain and spasm. (Tr. 523). From February 2008 to June 2008, Claimant received intermittent treatment at First Priority Medical Choice for check pain, low back pain, joint pain, and pain in her right leg. (Tr. 524-28). She was diagnosed with facet syndrome in her lumbosacral spine, lumbar sprain/strain, and sacroiliac sprain/strain. (Tr. 524).

On November 22, 2008, Claimant had a Physical Residual Functional Capacity Questionnaire completed by Alex Ambroz, M.D. He noted she had tenderness to palpation in the lumber spine, a reduced range of motion, positive straight leg raising test results in both sitting and supine positions, difficulty getting on an off the examination table, reduced deep tendon reflexes, reduced strength, an inability to squat, and difficulty with heel to toe walking. (Tr. 536-38). Dr. Ambroz also diagnosed her with degenerative disc disease of the lumber and cervical spine and osteoarthritis. (Tr. 538, 550).

In August and November 2009, Plaintiff went to Good Samaritan Free Clinic with complaints of pain, bronchitis, and symptoms associated with depression and anxiety. (Tr. 541-44, 558-60). On December 29, 2009, based partially on her daughter's death, becoming the guardian of her granddaughter, and her husband's loss of employment, Claimant was diagnosed with uncontrolled anxiety, acne, and pain in her cervical and thoracic spine. (Tr. 562-63).

D.    Testimonial Evidence

At the hearing, Claimant testified that she cannot work because her body hurts too much. (Tr. 60). She testified that she does not like to take her pain medication because it hurts her

stomach, and that if she does take it, it makes her tired, so that she is unable to drive or function. (Tr. 60). She did testify that the Tramadol injections are helpful, though, because they do not have the same effect on her stomach. (Tr. 60). She testified that the pain is in her lower lumbar region, radiates out into her hip sockets, and down into the right knee and leg area. (Tr. 60-61). On a scale from one to ten, her pain level ranges from an eight to a ten, even with the pain medication. (Tr. 42, 62). She testified that she can only stand for ten to fifteen minutes before she has to sit, and she can only sit for around an hour. (Tr. 62). She testified that her condition is deteriorating and it is not going to get any better at this point. (Tr. 65).

As to her mental illnesses, she testified that she is on anti-anxiety medication and that she was recently admitted to the hospital for a panic attack. (Tr. 43).

She also testified to the side effects she experiences from her medications. She says they cause her to feel tired, make her cry, make her stomach feel sick, and cause her not to want to do anything. (Tr. 43).

E.      Lifestyle Evidence

The following evidence concerning the Claimant's lifestyle was obtained at the hearing and through medical records. The information is included in the report to demonstrate how the Claimant's alleged impairments affect her daily life.

Claimant is married and lives together with her husband, her sixteen year old daughter, and her two grandchildren, who were two years old and four months old at the date of the hearing. (Tr. 56). Her husband has not worked in the past year in order to take care of her. (Tr. 38).

She has a driver's license however she tries not to drive because it worries her to drive

while on her medications. (Tr. 58). At the date of the second hearing, she had not been driving for three or four months, and before that, she was only driving once or twice a week to go to the grocery store. (Tr. 39). She occasionally helps with grocery shopping, food preparation, cleaning, and providing childcare for her grandchildren. (Tr. 63-64). She testified that she does not need help on a daily basis with personal care such as using the restroom or brushing her teeth. (Tr. 65).

### III.  The Motions for Summary Judgment

A.  Contentions of the Parties

Claimant's brief alleges that the ALJ failed to properly develop the record by failing to: 1) adequately question Claimant about her impairments, medical treatment, and functional restrictions; 2) order a consultative psychiatric examination; and 3) re-contact her treating physician to get additional records.

Commissioner contends that the record was adequately developed and substantially supports a finding that Claimant is not disabled.

B.  The Standards.

1.  Summary Judgment.  Summary judgment is appropriate if  "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  All inferences must be viewed in the light most favorable to the party opposing the motion.  Matsushita Elec.  Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587

(1986). However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

        2.      Judicial Review. Only a final determination of the Commissioner may receive judicial review. See 42 U.S.C. §405(g), (h); Adams v. Heckler, 799 F.2d 131,133 (4th Cir. 1986).

C.      Discussion

1.      Whether the ALJ Erred in Failing to Adequately Develop the Record About Claimant's Impairments, Medical Treatment, and Functional Restrictions

        Claimant first argues that the ALJ had a heightened duty to assist her in the proper presentation of her claim because she was unrepresented and that the ALJ failed to fulfill this duty. Specifically she argues that he failed to develop the record about her impairments, her medical treatment, and her functional restrictions. Commissioner maintains that the ALJ fulfilled this duty and adequately developed the record with respect to Claimant's impairments, medical treatment and functional restrictions.

        An ALJ has a duty to explore all relevant facts and inquire into issues necessary to develop the record. Cook v. Heckler, 57 F.2d 1168, 1173 (4th Cir. 1986). See also Stahl v. Commissioner, No. 2:07cv19, 2008 WL 2565895 (N.D. W.Va., 2008)(an ALJ has a heightened duty to ensure the claimant receives a full and fair hearing); Sims v. Harris, 631 F.2d 26, 27 (4th Cir. 1980)(the ALJ has a duty to help a claimant develop his or her case and ensure that all the facts are fully explored). However, the ALJ "is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record." Bell v. Chater, 57 F.3d

1065, 1995 WL 347142, at *4 (4th Cir. 1995) (quoting Clark v. Shalala, 28 F.3d 828, 830-831 (8th Cir. 1994)).

Claimant alleges that the ALJ could not have adequately considered her claims because he did not ask additional questions about Claimant's medical treatment, the frequency of her anxiety and panic attacks, the status of her low back pain, the status of her depression, if she had any changes since her previous hearing, nor did he ask her any questions about her functional limitations. However, this Court finds, to the contrary, that the ALJ adequately developed the record. Here, the ALJ questioned Plaintiff about her daily living, her educational background, and her past jobs. (Tr. 38-40). He also questioned her about the medical treatment she received, what pain medications she took, whether she experienced side effects from her medications, what level of pain she experiences, and whether she has had outpatient treatment for her mental impairments. (Tr. 40-44, 60-68). Finally, the ALJ also considered the numerous disability reports, in which Plaintiff described her functional limitations on daily activities. (Tr. 21, 165-81, 194-214, and 220-25). These reports show how her impairments affect her functional capacity and were appropriately reflected in the ALJ's RFC assessment.

Furthermore, Claimant also raises an argument that the second hearing, held in April, 2010, was insufficient because it lasted only eighteen minutes. First, the duration of a hearing alone is not determinative of whether the record was properly developed. See Gee v. Comm'r of Soc. Sec., No. 3:10-cv-474, 2011 WL 3472632, at *5-6 (E.D. Va. July 21, 2011)(rejecting contention that an eighteen-minuted hearing was inadequate). Furthermore, here, when the Appeals Council vacated the hearing decision and remanded the case to the Administrative Law Judge, it was based only on the fact that Claimant was not given the required twenty days notice

before the hearing, and because new and material evidence from Dr. Alex Ambroz indicated Claimant might be more limited than found in the original hearing decision. (Tr. 88). The ALJ made careful effort to rectify these problems during the subsequent hearing. For the second hearing, Claimant did receive the requisite notice, and additionally, the ALJ addressed the evidence from Dr. Ambroz and his diagnosis of degenerative disc disease of the lumbar and cervical spine and osteoarthritis in his opinion, as well as other new evidence, such as the recent death of Claimant's twenty-three year old daughter. (Tr. 23). Finally, the ALJ stated on the record at the subsequent hearing that he had reviewed all the testimony from the prior hearing and it was incorporated into the subsequent hearing, creating a complete record. (Tr. 36). Accordingly, given this record, the ALJ did not err by failing to adequately develop the record. Claimant's argument must be denied as without merit.

2.    Whether the ALJ Erred in Failing to Order a Consultative Psychiatric Examination

Petitioner next asserts that the ALJ should have brought in a consulting psychiatric expert to determine whether Claimant meets the criteria under a Listing. As a rule, although Claimant bears the burden of proof where the evidence in the record is equivocal, the ALJ has a duty to assist in developing the record. Sims v. Apfel, 530 U.S. 103 (2000). The ALJ has a duty to develop Claimant's complete medical history before making a determination of non-disability; to obtain additional information if reports from the medical sources contain ambiguities, and to order a consultative examination if unable to seek clarification from medical sources or if the information is not readily available from records. 20 C.F.R. § 404.1519(a)((b)(1). Remand is necessary where the ALJ fails to fulfill his duty to develop the medical record and the claimant is prejudiced as a result.  Walker, 642 F.2d at 714.  Prejudice results where the Commissioner's

decision "might reasonably have been different had the evidence been before [him] when the decision was rendered." King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979). In this case, however, the record did not need clarification with regard to Claimant's mental or physical health status. Here, Claimant was diagnosed with depression and anxiety, but the record shows they are situational or are maintained through psychotropic medications. (Tr. 32-33, 348, 350-51, 453, 485-86, 544, 558-60, 562-63). Furthermore, Claimant had already undergone a consultative psychological examination in August 2007, a date relevant to the time period being considered by the ALJ, and the ALJ used this in his determination. Finally, Claimant is unable to demonstrate that further evaluation was necessary. There is no evidence of deterioration of her mental status, her symptoms were being treated with medications, and Dr. Ambroz did not recommend any further consultations or referrals. (Tr. 485, 537-38, 558, 560, 562-63). Accordingly, there was no ambiguity that warranted a consultative psychiatric examination. There was sufficient evidence for the ALJ to find that Claimant is not disabled and with such a record, there was no need to elicit the testimony of consulting medical experts.

3.      Whether the ALJ Erred in Failing to Recontact Claimant's Treating Physical for
        Additional Records

        Finally, Claimant argues that the ALJ failed to properly develop the administrative record because he did not re-contact her treating physician, Dr. Ambroz, to obtain his medical treatment records. The Fourth Circuit has held that "the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record." Cook, 783 F.2d at 1173. Although a Claimant has a duty to diligently supply medical records to the SSA documenting the Claimant's impairments and limitations, the Commissioner bears the responsibility of developing the Claimant's complete medical history. 20 C.F.R. §§ 416.912(d),

404.1740(b); See Smith v. Barnhart, 395 F. Supp.2d 298, 302 (E.D.N.C. 2005). Therefore, where a Claimant's medical records are "inadequate" to determine whether she is disabled, the ALJ must seek additional records and is obligated to re-contact Claimant's treating physicians "and seek additional evidence or clarification" from them. 20 C.F.R. § 416.912(e)(1); Smith, 395 F. Supp.2d 298 at 301. See also Moody v. Barnhart, 114 Fed. Appx. 495 (3d. Cir. 2004) (no need to re-contact physician because there was sufficient evidence in the medical records before the ALJ to make her decision); Robertson v. Chater, 900 F. Supp. 1520, 1530 (D. Kan. 1995) ("Pertinent inquiry is whether the record contained sufficient medical evidence for the Commissioner to make an informed decision as to the Claimant's alleged impairment").

Here, there was enough information in the ALJ's possession so that he did not need to seek additional evidence or clarification by re-contacting her treating physician. The ALJ reviewed medical records dating back to 2003 including consultative examination reports, opinions for State Agency consultants, written reports from Claimant, and testimony from two hearings including Claimant's own statements about daily activities she is able to perform and the work activity she was able to complete after her onset date. (Tr. 24, 32-45, 50-72, 166, 174-81, 195, 203-07, 208-14, 221, 274-528, 540-44, 557-66). In addition, there was no evidence to indicate that the extreme functional limitations noted by Dr. Ambroz were credible, and thus the ALJ did not commit error by electing not to re-contact him. Finally, even assuming *arguendo* the ALJ should have re-contacted Dr. Ambroz, "the Claimant must also show (s)he was prejudiced by the inadequate record and that, had the ALJ complied with the regulation, he 'could and would have adduced evidence that might have altered the result." Hyde v. Astrue, 2008 U.S. App. LEXIS 10228 (5th Cir.) (citing Kane v. Heckler, 731 F.2d 1216, 1220 (5th Cir. 1984)).

Remand is necessary where the ALJ fails to fulfill his duty to develop the medical record and the Claimant is prejudiced as a result. Here, Claimant has not shown what additional information would have resulted from having re-contacted this doctor, and what impact this would have had on the outcome. Furthermore, given the substantial support for the ALJ's RFC assessment, Claimant is unable to show that her case was prejudiced by the alleged lack of further development of the record. Accordingly, Claimant's remaining claim must be dismissed as without merit.

For the above reasons, Claimant's assertions do not warrant relief.

## IV. Recommendation

For the foregoing reasons, I recommend that:

1.      Claimant's Motion for Summary Judgment be **DENIED.**

2.      Commissioner's Motion for Summary Judgment be **GRANTED**.

Any party who appears *pro se* and any counsel of record, as applicable, may, on or before **June 8, 2012**, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.

DATED: May 25, 2012

/s/ *James E. Seibert*
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE